IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL COOK : CIVIL ACTION
:
v. :
: NO. 14-5842
CITY OF PHILADELPHIA :

KEARNEY, J.                                                                                    March 2, 2015

## MEMORANDUM

Potential employers may not discriminate against job applicants if they regard the applicant as disabled even if he is not. Typically, those seeking a remedy must timely exhaust administrative processes before filing suit. Here, Defendant City of Philadelphia ("City") decided to withdraw a conditional job offer to Plaintiff Michael Cook ("Cook") to serve as a police officer two days after the City received results of psychological testing it required after making the conditional offer. Cook elected not to pursue an administrative remedy and filed this action under the Rehabilitation Act, 29 U.S.C. §701 *et seq.* ("RA") and Title II of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"). The City moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Based on the ample weight of legal authority, Cook's ADA claim is barred for his admitted failure to exhaust his administrative remedies. His RA claim of "regarded as" disabled, based on the standards applied now, may proceed into discovery. The accompanying Order grants in part and denies in part the City's motion to dismiss.

1

I.  **Background**

Cook first applied to be a police officer in February 2012. (*See* Complaint at ECF Doc. No. 1, ¶6) He passed a multiple choice test and the City placed him in the top twenty-five percent (25%) of the candidates. (*Id.*) He also passed the required preliminary tests and examinations, including agility and reading tests. (*Id.* at ¶7) After the City's September 2012 interview, the City offered Cook conditional employment subject to medical, psychological and polygraph examinations, background check, and completion of a personal data questionnaire. (*Id.* at ¶¶7-8) At some point thereafter, the City "informally" told Cook that the result of the polygraph examination was "unsuccessful," which Cook challenged through unnamed "various channels." (*Id.* at ¶¶9-10) It is presently unknown whether Cook took and passed the psychological examination. The City then allegedly advised Cook to reapply. (*Id.* at ¶10)

In April 2013, Cook tried again. He passed the polygraph test in April 2013. (*Id.* at ¶¶11-12) The City again gave Cook a conditional offer of employment subject to "various testing," including a Multiple Multiphasic Personal Inventory ("MMPI") test. (*Id.* at ¶13) Cook passed the MMPI test and then took a psychological examination in early May 2013. (*Id.* at ¶¶13-14)

Two days after taking the psychological exam, the City withdrew Cook's offer based on the psychological exam. (*Id.* at ¶15) Cook asked the City for a copy of the psychological examination, its findings and conclusions, and any other information regarding the psychological examination. (*Id.* at ¶16) The City decided <u>not</u> to provide Cook with a copy. (*Id.*)

Cook alleges that the City "regarded him as" having a psychological impairment or disability within the meaning of the RA and ADA and consequently failed to hire him as a police officer. (*Id.* at ¶17) The City moves to dismiss arguing: (1) Cook cannot plausibly show he is disabled; (2) Cook cannot show that he is qualified to be a police officer; and, (3) even assuming

Cook could show that he was disabled and qualified, his ADA claim must be dismissed for failure to exhaust administrative remedies. (ECF Doc. No. 4)

## II. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim;'" (2) "the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679) (footnote omitted)[1]; *see also*, *Burtch*, 662 F.3d at 221;

---

[1] In defining the three-step analysis, the Court of Appeals noted: "*Iqbal* describes the process as only a 'two-pronged approach.' It preceded that description, however, by noting that it is often necessary to 'begin by taking note of the elements a plaintiff must plead to state a claim.' Thus, we view *Iqbal* as outlining three steps." *Santiago*, 629 F.3d at 130, n.7 (internal quotations to *Iqbal* omitted).

3

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) ("This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.")

### III. Analysis

#### A. Plaintiff's Rehabilitation Act claim sufficiently alleges facts, accepted as true, which may state a claim to relief that is facially plausible.

In Count I, Cook alleges the City "regarded him as" disabled based on the results of the May 2013 psychological examination and then withdrew its conditional offer of employment on that basis. Section 504 of the RA "bars both federal agencies and private entities that receive federal funding from discriminating on the basis of disability and is not limited to the employment context." *Freed v. Consol. Rail Corp.*, 201 F.3d 188, 191 (3d Cir. 2000).[2] The standards used to evaluate an RA claim are the same as those applied to Title I claims under the ADA. *See* 29 U.S.C. §794(d); *see also, Fowler v. UPMC Shadyside*, 578 F.3d 203, 208 (3d Cir. 2009) (the standards for determining whether a covered employer has violated Section 504, 29 U.S.C. § 794(d), "have been coextensive with the standards for determining whether a covered employer has violated the ADA.")

---

[2] Section 504 provides:

> No otherwise qualified individual with a disability ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

Here, Plaintiff Cook must allege that he (1) is disabled within the meaning of the ADA; (2) is otherwise qualified to perform, with or without reasonable accommodations, the essential functions of his job; and (3) has suffered an adverse employment decision as a result of the discrimination. *McFadden v. Biomedical Systems Corp.*, Civ.A. No. 13-4487, 2014 WL 80717, at *2 (E.D. Pa. Jan. 9, 2014) (citing *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 (3d Cir.1998) (citation omitted)).[3]

Plaintiff Cook is "disabled" if he (1) has "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or (3) is "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Under the ADA, as amended by the ADA Amendments Act of 2008 ("ADAAA"), the definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. §12102(4)(A).

Here, Cook does not allege an actual disability that "substantially limits one or more major life activities" or a record of such an impairment. His only allegation is that the City "regarded him as having a mental or psychological impairment and as handicapped or disabled within the meaning of the RHA and/or ADA and discriminatorily rejected him for employment on that basis." (ECF Doc. No. 1, ¶17)

The ADA, as amended by the ADAAA, defines "regarded as having such an impairment" as:

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived

---

[3] Similarly, "to make out a prima facie case of discrimination under the Rehabilitation Act, the employee bears the burden of demonstrating (1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job." *Donahue v. Conrail*, 224 F.3d 226, 229 (3d Cir. 2000) (citation omitted).

> physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(3)(A).

> The regulations implementing the ADA, as amended by ADAAA, instruct:
>
>> [A]n individual is 'regarded as having such an impairment' if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity.

29 C.F.R. §1630.2(l)(1) (2015).

> Additionally, an individual is "regarded as having such an impairment"
>
>> any time a covered entity takes a prohibited action against the individual because of an actual or perceived impairment, even if the entity asserts or may or does ultimately establish, a defense to such action.

29 C.F.R. §1630.2(l)(2).

"Thus, the plain language suggests that a [p]laintiff need only plead that [he] was discriminated against because of an impairment (either actual or perceived)." *Riley v. St. Mary Med. Ctr.*, Civ. A. No. 13-7205, 2014 WL 2207347, at *2 (E.D. Pa. May 28, 2014); *see also Koci v. Central City Optical Co.*, Civ.A. No. 14-2983, 2014 WL 6388469, at *3 (E.D. Pa. Nov. 14, 2014) (*quoting Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996) ("When a plaintiff alleges a perceived disability, the question is not the plaintiff's actual condition but rather [his] condition as perceived by [his] employer, including the 'reactions and perceptions of the persons interacting or working with [him].'")

Viewing Cook's allegations of "regarded as" disability in the light most favorable to him, Cook alleges that he was successful in his second application as a police officer, was placed on a list of candidates, passed a polygraph test, a conditional offer of employment was extended to him, and, thereafter, he "passed" the MMPI test. (*See* ECF Doc. No. 1 at ¶¶11-13) Two days

6

after Cook submitted to the psychological examination, the City withdrew the conditional offer of employment "on the basis of the findings of his psychological examination." (*Id.* at ¶15)

The Court finds that Cook has adequately alleged facts to support an inference, at this early stage of the litigation, that the City "regarded [him] as" having a mental or psychological disability. *See Fowler*, 578 F.3d at 211-12. It is reasonable to infer from these allegations that the City "regarded" Cook as disabled. Cook plausibly alleges that he passed all requisite testing and was extended a conditional employment offer; an offer that was withdrawn two days after Cook's testing with a rehabilitation psychologist. The City told Cook that the findings of the psychological examination required the withdrawal of the conditional offer.

The City's arguments – that Cook cannot show he is disabled[4] or that he is qualified as a police officer - are more properly made at the summary judgment stage.[5] The Court declines to dismiss Cook's RA claim before the parties fully develop the factual record. Significantly, Cook alleges that he asked for a copy of the psychological examination, but was not provided a copy of

---

[4] Citing *Koci, supra,* the City argues that any impairment that is less than six months in duration is "transitory and minor" and not actionable. Section 12102(3)(B) specifically excludes "transitory and minor" impairments – those with a duration of six (6) months or less – from the "regarded as" prong of the definition of "disability." *See* 42 U.S.C. §12102(3)(B). In *Koci*, plaintiff alleged her employer terminated her because it regarded her as disabled from depression. In granting the employer's motion to dismiss, the court found that the plaintiff failed to allege a perceived disability that would have been anything but transitory and minor because the onset of plaintiff's perceived depression occurred only twenty-two days before her termination. *Koci*, 2014 WL6388469, at *3. Here, Cook has alleged that the City failed to hire him because of a perceived disability resulting from the psychological exam – the results of which Cook does not have despite his alleged requests to the City. In the regulations, "transitory and minor" impairments may be a defense to a charge of discrimination by an individual claiming disability under the "regarded as" prong. *See* 29 C.F.R. §1630.15(f). "To establish this defense, a covered entity must demonstrate that the impairment is both 'transitory' and 'minor.'" *Id.* Thus, it is the City's burden to demonstrate that the impairment would be both transitory and minor. Unlike the pleading in *Koci*, there is nothing on the face of the complaint to indicate that Cook's "regarded as" disability is "transitory and minor."

[5] Notably, nearly all of the cases cited by the City in support of its motion, including *Terry v. Town of Morristown*, 446 F.App'x 457 (3d Cir. 2011) and *Diaz v. City of Phila.*, Civ.A. No. 11-671, 2012 WL 1657866 (E.D. Pa. May 10, 2012), were decided on motions for summary judgment, a "vastly different" standard from a Rule 12(b)(6) motion. *See Fowler*, 578 F.3d at 213.

it. The City's motion argues that the Court should not assume that a "rejection based on the results of [Cook's] psychological examination necessarily means [the City] perceived him as having a mental impairment within the meaning of the ADA" and that "the mere fact that [the City] rejected [Cook] does not prove, in and of itself, [the City] regarded him as disabled." (ECF Doc. No. 4 at pp. 6-7) This may be true, and the City may well have a summary judgment argument. However, Cook alleges the City regarded him as disabled based on the results of the psychological exam and then promptly decided not to hire him because of those results. Accordingly, the City's motion to dismiss Cook's RA claim (Count I) is denied.

### B. The ADA claim must be dismissed for failure to exhaust administrative remedies.

The City seeks dismissal of Cook's ADA claim (Count II) for failure to exhaust administrative remedies.[6] There is no dispute that Cook did not exhaust his administrative remedies. Cook argues that his ADA claim is properly brought under Title II of the ADA which is not subject to an exhaustion requirement, citing *Saylor v. Ridge*, 989 F.Supp. 680, 688 (E.D. Pa. 1998) (allowing a claim for employment discrimination under the ADA to proceed under Title II).

The relevant provisions of the ADA at issue here are Title I, "Employment," 42 U.S.C. §§ 12111-12117, and Title II, "Public Services," 42 U.S.C. §§ 12131-12134. Title I provides in relevant part:

---

[6] The City concedes that Cook's RA claim is not subject to an exhaustion requirement, citing *Freed v. Consolidated Rail Corp.*, 201 F.3d 188 (3d Cir. 2000). In *Freed*, the Court of Appeals addressed "whether a plaintiff must exhaust administrative remedies prior to bringing suit under section 504 of the Rehabilitation Act against a private recipient of federal funds." *Freed*, 201 F.3d at 189. The Court held that a plaintiff did not, reaffirming its "long-standing position that section 504 plaintiffs may proceed directly to court without pursuing administrative remedies," and distinguishing section 504 claims brought by federal employees against federal employers which require exhaustion of administrative remedies. *Id.* at 194. *See also, Luise v. Colonial Intermediate Unit*, Civ.A. No. 13-2626, 2014 WL 1225969, *7-*8 (E.D. Pa. Mar. 21, 2014). Accordingly, for purposes of this motion, we address the City's exhaustion argument only with respect to Cook's ADA claim.

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. §12112(a).

> Title II provides in relevant part:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. §12132.

Title I incorporates the administrative procedures of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5. *See* 42 U.S.C. §12117; *Churchill v. Star Enterprises*, 183 F.3d 184, 190 (3d Cir. 1999). Thus, a plaintiff alleging a Title I violation must first exhaust administrative remedies before filing an action in court. *See* 42 U.S.C. §§ 2000e-5(e), (f)(1); *see also Khalil v. Rohm & Haas Co.*, Civ.A. No. 05-3396, 2005 WL 3111791, at *2 (E.D. Pa. Nov. 18, 2005).

Title II, on the other hand, incorporates the RA's enforcement provisions which do not require a plaintiff exhaust his administrative remedies. *See Helen L. v. DiDario*, 46 F.3d 325, 330, n.7, 331 (3d Cir. 1995); *Smith v. City of Philadelphia*, 345 F. Supp. 2d 482, 486 (E.D. Pa. 2004); *Bechtel v. E. Penn Sch. Dist. of Lehigh Cnty.*, Civ.A.No. 93-4898, 1994 WL 3396, at *2 (E.D. Pa. Jan. 4, 1994).

In *Saylor v. Ridge*, the plaintiff brought employment discrimination claims under, *inter alia*, both Title I and Title II of the ADA. In determining whether the Title II claim should be dismissed, the court, in 1998, recognized a split among authorities on whether Title II applies to claims of employment discrimination, including two earlier opinions from the district court.[7]

---

[7] *See Bracciale v. City of Philadelphia*, Civ.A.No. 97-2464, 1997 WL 672263, at *7 (E.D.Pa. Oct.29, 1997) and *Bruton v. SEPTA*, Civ.A.No. 94-3111, 1994 WL 470277, at *2 (E.D.Pa. Aug. 19, 1994).

*Saylor*, 989 F.Supp. at 688. The court in *Saylor* followed the then-recent holdings in the 1994 and 1997 cases from the courts in this district, and the holdings of federal courts nationwide similarly finding that a claim for employment discrimination may be brought under Title II. *Id.*

Our Court of Appeals has not decided the specific issue of whether a claim for employment discrimination under the ADA is cognizable under Title II.[8] Neither party cited any case applying *Saylor* after 1998 to allow an ADA employment discrimination claim to proceed under Title II. This Court's independent research did not find any case, since 1998, applying *Saylor* for the proposition Cook advocates here. To the contrary, since 1998, many district courts within the Third Circuit have held that Title II does not apply to employment claims. *See Williams v. Pa. Human Relations Comm.*, Civ.A.No. 14-1290, 2015 WL 222388, at *1, n.2 (W.D. Pa. Jan. 13, 2015); *Kortyna v. Lafayette College*, Civ.A.No. 14-2092, 2014 WL 4682084, at *6, n.29 (E.D.Pa. Sept. 19, 2014); *Houston v. Township v. Randolph*, Civ.A.No. 11-4810, 934 F.Supp. 2d 711, 740-741 (D.N.J. 2013); *Coleman v. Pa. State Police*, Civ.A. No. 11-1457, 2013 WL 3776928, at *24-*26 (W.D. Pa. July 17, 2013), *aff'd* 561 F.App'x 138 (3d Cir. 2014); *Stine v. Pa. State Police*, Civ.A.No. 09-944, 2010 WL 4514326, at *5, n.5, n.6 (M.D. Pa. Nov. 2,

---

[8] The Court of Appeals has addressed the issue of whether Title III applies in the employment context. In *Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3d Cir. 1998), the Court examined whether plaintiff stated a claim under Title III of the ADA against her former employer and the insurer of a disability plan that discontinued benefits. The *Ford* court found that the disability benefits at issue were offered to plaintiff in the context of her employment and constituted part of the terms and conditions of her employment. *Id.* at 612. In its analysis, the court stated "[t]erms and conditions of employment are covered under Title I, not Title III," and found that plaintiff failed to state a claim under Title III. *Id.* at 612, 614. Similarly, in *Menkowitz v. Pottstown Memorial Medical Center*, 154 F.3d 1139 (3d Cir. 1998), the Third Circuit examined whether Title III applied in a disability discrimination claim brought by a medical doctor who was not employed by the hospital but held staff privileges. In examining the legislative history of the ADA and the distinctions between Titles I and III, the *Menkowitz* court found "it is evident that Congress sought to regulate disability discrimination in the area of employment exclusively through Title I, notwithstanding the broad language of Title III." *Id.* at 118-19. *See also, Kortyna*, 2014 WL 4682084, at *6, n.29. The analyses of the Court of Appeals in *Ford* and *Menkowitz* in the context of Title III further weighs in favor of disallowing employment discrimination claims under Title II.

2010); *Hemby-Grubb v. Indiana Univ. of Pa.*, Civ. A. No. 06-1307, 2008 WL 4372937, at *6-*7 (W.D. Pa. Sept. 22, 2008); *Pennsylvania State Troopers Assoc. v. Pennsylvania*, Civ.A.No. 06-1079, 2007 WL 853958, *6-*8 (M.D. Pa. Mar. 20, 2007); *McSherry v. Dept. of Labor & Ind.*, Civ.A. No. 04-132, 2006 WL 463157, *7-*9 (M.D. Pa. Feb. 23, 2006); *Nelson v. Pa. Dep't of Pub. Welfare*, 244 F.Supp.2d 382, 388–89 (E.D. Pa. 2002); *Koslow v. Commw. of Pa.*, 158 F.Supp.2d 539, 542 (E.D. Pa. 2001) (*aff'd in part, rev'd in part on different grounds by Koslow v. Commw. of Pa.*, 302 F.3d 161 (3d Cir.2002)).

Additionally, the Court of Appeals for the Second, Seventh, Ninth and Tenth Circuits have all held that Title II of the ADA does not cover disability-based employment discrimination claims, and that such claims must be brought after exhausting administrative remedies under Title I.[9] See *Mary Jo C. v. NY State & Local Retirement System*, 707 F.3d 144, 166-172 (2d Cir. 2013); *Brumfield v. City of Chicago*, 735 F.3d 619, 624-630 (7th Cir. 2013); *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169 (9th Cir.1999); *Elwell v. Oklahoma, ex rel., Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1306-1310, 1314 (10th Cir. 2012).

Here, the sound reasoning in *Hemby-Grubb*, as well as the opinions from the Courts of Appeals, leads this Court to find that Congress did not intend Title II of the ADA to apply to employment discrimination claims when it has expressly authorized a mechanism to bring employment claims under Title I. "It would seem a tortured reading of the ADA as a whole to construe that after covering employment in Title I, Title II likewise was intended to encompass employment actions without explicitly saying so." *Hemby-Grubb*, 2008 WL 4372937, at *7. Although he urges the Court to follow *Saylor*, Cook has done nothing to distinguish opinions from the courts of this district and other district courts within the Third Circuit since the 1998

---

[9] In 1998, the Eleventh Circuit has reached the opposite conclusion. See *Bledsoe v. Palm Beach County Soil & Water Conservation Dist.*, 133 F.3d 816 (11th Cir. 1998).

*Saylor* opinion, or provided any argument as to why Title II, rather than Title I, should apply to him in this case. Cook has not offered any argument why we should depart from the majority and more recent view that Title I, and not Title II, governs employment discrimination claims, and in particular why we should depart from the persuasive opinions from the Courts of Appeals analyzing Congressional intent. We will decline Cook's invitation to follow *Saylor* and find that his claim for employment discrimination may not be maintained under Title II of the ADA. As set forth above, claims under Title I of the ADA require an exhaustion of administrative remedies which Cook failed to do. Accordingly, Count II of Cook's complaint is dismissed.